

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Mark Filip | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 6051 | **DATE** | 8/17/2004 |
| **CASE TITLE** | LaSalle Business Credit vs. GCR | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER: Defendants' motion to dismiss for lack of personal jurisdiction is granted. All other motions are denied as moot.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | |
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | AUG 1 8 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | IS | **44** |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| TBK | courtroom deputy's initials | | | mailing deputy initials |

U.S. DISTRICT COURT
CLERK
2004 AUG 17 PM 2 43

Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LASALLE BUSINESS CREDIT, L.L.C., a Delaware limited liability company, and LASALLE BANK NATIONAL ASSOCIATION, | ) ) ) ) | **DOCKETED** AUG 1 8 2004 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 03 C 6051 |
| GCR EURODRAW S.p.A. (f/k/a EURODRAW SRL), a foreign corporation, and ANDRE SODITIC, S.A. (d/b/a ATLAS CAPITAL, S.A.), a foreign corporation, | ) ) ) ) ) | Hon. Mark Filip |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are various motions of Defendant GCR Eurodraw S.p.A. and Defendant

AS Associated Contractors, S.A. (sued herein as Andre Soditic, S.A.). Defendants collectively

move to dismiss Plaintiffs' Second Amended Complaint with prejudice in favor of arbitration for

lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), to dismiss for lack of personal

jurisdiction under Fed. R. Civ. P. 12(b)(2), and to dismiss for failure to state a claim upon which

relief can be granted under Fed. R. Civ. P. 12(b)(6) and 9(b). Defendant GCR Eurodraw S.p.A.

also moves to dismiss for insufficient service of process under Fed. R. Civ. P. 12(b)(5). For the

reasons stated below, the Court grants Defendants' motion to dismiss for lack of personal

jurisdiction and denies the remaining motions as moot.

## BACKGROUND

The parties in this case are commercial entities that have various connections to locations

in the United States and Europe. Plaintiff LaSalle Bank National Association is a national

44

banking association located in Illinois (Second Am. Compl. (D.E. 19) ¶ 2), and Plaintiff LaSalle

Business Credit, L.L.C., one of LaSalle's Bank National Association's affiliates, is a Delaware

company with offices in Illinois (*id.* ¶ 1).[1]  LaSalle Business Credit is in the business of, among

other things, issuing letters of credit.  (*Id.*)  As explained further below, Plaintiffs (collectively,

"LaSalle") do not sue in their own capacities, but rather sue "in the place of, and as the assignees

of the rights of" North American Wire, an Ohio corporation and former client of LaSalle.  (*Id.* ¶

10.)

Defendant GCR Eurodraw S.p.A. ("GCR") is an Italian corporation that constructs

machines for manufacturing and processing steel wire.  (*Id.* ¶ 4.)  Plaintiffs allege that GCR

maintains offices in the United States through its agent, GCR-Eurodraw, Inc., which is located in

South Carolina.  (*Id.*)  Defendant AS Associated Contractors, S.A. ("Associated") is a Swiss

financial company that sometimes acts as an intermediary (and did act as GCR's intermediary in

this case) in international transactions.  (*Id.* ¶ 5.)

This suit arises from GCR's agreement to sell wire manufacturing equipment to non-party

North American Wire Products ("NAW"), an Ohio company with its principal place of business

in Ohio.  (*Id.* ¶ 3.)  Specifically, on September 26, 2000, NAW, GCR, Associated, and non-party

Confirmec S.p.A., an Italian exporter, entered into a contractual arrangement regarding the sale

of machinery to NAW and transportation of the machinery from Italy to Ohio.  (*Id.* ¶ 11; *see also*

Pls.' Resp. to Defs.' Mot. to Dismiss the Second Am. Compl. (D. E. 36), Ex. B ("Agreement") at

1 ¶ 4 (calling for delivery of the machinery in Cleveland, Ohio).)  Prior to entering into this

contractual arrangement, officers of NAW, the Ohio corporation, and officers of GCR, the Italian

---

[1]     "D.E." refers to the docket entry number of the cited document.

supplier, had several face-to-face meetings in Italy, Ohio, and Georgia, to negotiate the terms of the arrangement. (D.E. 19 ¶¶ 17-21.)

The terms of the arrangement were memorialized as follows. In a document titled "Agreement," GCR agreed to produce machinery in Italy and sell and deliver it to NAW in Ohio. (*Id.* ¶ 11; Agreement at 1 ¶¶ 2-4.) Pursuant to the Agreement, GCR was to manufacture and deliver the machinery to NAW in Ohio "[s]ubject to the terms and conditions set out in contract no. ED-019/00 R1." (Agreement at 1 ¶ 2.) Contract No. ED-019/00 R1 appears to be a separate document labeled "Order Confirmation K. N° ED-019/00 R1," which describes in detail the machinery to be sold, as well as other aspects of the sale, sometimes duplicating or nearly duplicating provisions of the Agreement. (D.E. 36, Ex. A ("Order Confirmation").)

The Agreement contained an arbitration clause, calling for arbitration in Geneva, Switzerland. (Agreement ¶ 10.) The Agreement provided that all disputes "which may arise between the parties hereto, out of or in relation to or in connection with this Agreement or the breach thereof shall be finally settled by arbitration conducted in accordance with the rules of the International Chamber of Commerce . . . . Such arbitration shall take place in Geneva . . . . The arbitrators shall apply the laws of Switzerland, as to substantive questions." (*Id.*) The Order Confirmation did not contain an arbitration clause or address the subject of arbitration.

As part of the transaction, NAW obtained a letter of credit from LaSalle Bank, which guaranteed 85% of the purchase price. (D.E. 19 ¶¶ 2, 12.) In this regard, the Agreement called for eighty-five percent of NAW's total payment to GCR to be deferred and guaranteed by a "Stand-By Letter of Credit . . . issued by LaSalle Bank NA and advised to ABN-Amro Bank N.V., Monaco" ("ABN-Amro" or "ABN-Amro Monaco") (Agreement ¶ 7), in favor of

Associated as GCR's intermediary (D.E. 19 ¶ 2). LaSalle issued the letter of credit on March 8, 2001. (D.E. 19 ¶ 15.) The letter of credit named NAW as applicant and allowed Associated to draw on the letter through presentment of a certificate to LaSalle stating that the amount drawn was equal to the value of machinery shipped by GCR and due from NAW under a purchase order. (*Id.*, Ex. C ("Letter of Credit") at 1.) The parties revised the Letter of Credit on April 10, 2001 (before any draws were made on it), substituting the Order Confirmation for the purchase order and allowing ABN-Amro Monaco to "ADD THEIR CONFIRMATION." (*Id.*, Ex. D at 1.) As a consequence, the parties added ABM-Amro Monaco as a confirming bank, which required ABM-Amro Monaco to pay Associated upon presentation by Associated of appropriate documents to ABM-Amro in Monaco, and removed ABM-Amro Monaco from its status as merely an advising bank, as was originally called for in the Agreement. (Agreement ¶ 7.)[2]

Plaintiffs allege (again, suing in place of and as assignees of the claims of NAW (D.E. 19 ¶ 10)) that GCR, among other things, lied about its production and delivery capacity to induce NAW to purchase the machinery (*id.* ¶¶ 26-27). NAW allegedly told GCR during negotiations in Italy, Ohio, and Georgia (and never in Illinois) that delivery of the machinery according to NAW's timetable and specifications was "essential to [NAW's] willingness to enter into the

---

[2]     "Confirming banks" and "advising banks" are common in international letter of credit transactions. When a bank local to the supplier/vendor is added as a "confirming bank," that bank not only is available to advise the supplier/vendor that a letter of credit is open for its benefit, but the bank will add its engagement to that of the issuing bank. This added engagement (which makes the confirming bank independently liable to pay upon presentment of appropriate documents to it) is known as a "confirmation," and the bank that makes it is a "confirming bank." *See* John F. Dolan, *The Law of Letters of Credit* ¶ 1.03 at 1-15 to 1-16 (rev. ed. 2003). Sometimes "advising banks" also are available for presentment of documentation under the letter of credit, *see id.*, but it is unclear from the record whether ABN-Amro Monaco was initially intended (prior to being added as a full-fledged confirming bank) to be a possible recipient of documentation under the Letter of Credit.

4

Agreement." (*Id.* ¶ 18.) Plaintiffs claim that although GCR was planning to relocate its production facilities within Italy (*id.* ¶ 22)—which GCR knew would leave it without the production capacity to meet either of NAW's requirements (*id.* ¶ 27)—GCR did not tell NAW about the relocation and assured NAW that it could meet NAW's specifications (*id.* ¶¶ 19, 21, 23). Plaintiffs further claim that, without the proper production capacity, GCR did not, and could not, perform the contract. Indeed, according to Plaintiffs' allegations, most of the machinery NAW purchased was never delivered to Ohio or installed as promised. (*Id.* ¶ 24.) And, according to Plaintiffs' allegations, what machinery did arrive in Ohio came late and was so defective as to be "inoperable." (*Id.*)

Plaintiffs allege that although GCR and Associated both knew that GCR had not performed in accordance with the Agreement and Order Confirmation (*id.* ¶ 43), Associated, on behalf of itself and GCR, presented five documents for payment to ABN-Amro in Monaco pursuant to the credit arrangement, each of which falsely certified that GCR had performed a portion of its obligations "in accordance with all of the terms and conditions of" the Order Confirmation (*id.* ¶ 25). Defendants allegedly drew $2,072,186.14 in this fashion over a period of five months (*id.*), and the entire transaction allegedly harmed NAW's business in the amount of some $8 million beyond the $2.6 million paid on the contract (*id.* ¶ 30), leaving NAW unable to repay its obligations to LaSalle under the Letter of Credit and its loan documents with LaSalle (*id.* ¶ 10).

NAW assigned its claims against the Defendants to Plaintiffs. (*Id.*) In Count I, Plaintiffs sue GCR for fraudulent inducement. Plaintiffs claim that GCR falsely promised that it could manufacture and deliver certain machinery to NAW in Ohio when GCR allegedly knew that it

5

could not meet the promised schedule; in doing so, Count I alleges, GCR fraudulently induced NAW to enter into the Agreement, to enter into other commercial agreements with potential customers, to enter into the Letter of Credit, and to spend money remodeling NAW's Ohio production facilities. (*Id.* ¶¶ 26-31.) Plaintiffs seek compensatory damages in excess of $10.6 million, as well as punitive damages. (*Id.* ¶¶ 30-31.)

In Count II, Plaintiffs are suing GCR for promissory fraud, and this count is substantially similar to Count I. (*Id.* ¶¶ 32-41.) It also is based on alleged misrepresentations made to NAW in Georgia and Italy. (*Id.* ¶¶ 32-35.) Count II seeks $2.6 million in damages for the purchase price under the Agreement, and more than $8 million for "lost opportunities, sales, profits, reputation and goodwill" for NAW and for "expenses associated with preparing and modifying" NAW's (*id.* ¶ 40) facilities in Ohio, and punitive damages (*id.* ¶ 41).

In Count III, Plaintiffs sue both GCR and Associated for fraudulent misrepresentation in drawing on the Letter of Credit. (*Id.* ¶¶ 42-46.) More specifically, Plaintiffs allege that Defendants made false statements of material fact to ABN-Amro in Monaco when they represented that "GCR had performed in accordance with [the] Agreement and Confirmation No. ED-019/00/R1." (*Id.* ¶ 43.) Plaintiffs allege that as a result of Defendants' wrongful conduct, "North American Wire incurred damages in the amount of $2.6 million." (*Id.* ¶ 45.) Plaintiffs seek that sum in compensatory damages, plus punitive damages. (*Id.* ¶¶ 45-46.)

Count IV is advanced against GCR alone. It seeks recovery of the $2.6 million purchase price under the Agreement, which was obtained in part through the alleged tender of "fraudulent documents to ABN Amro" in Monaco "to obtain payment under the Letter of Credit." (*Id.* ¶ 50.) This count seeks $2.6 million in compensatory damages and punitive damages—all under an

unjust enrichment theory. (*Id.* ¶¶ 51-53.)

Defendants have filed several motions. First, Defendants move to dismiss the suit under Fed. R. Civ. P. 12(b)(1), arguing that the Court lacks subject matter jurisdiction over Plaintiffs' claims because the parties to the Agreement agreed to submit disputes between them to binding arbitration. (Defs.' Mot. to Dismiss the Second Am. Compl. (D.E. 24) at 1; Mem. of Law in Supp. of Defs.' Mot. to Dismiss the Second Am. Compl. (D.E. 25) at 6-8.) Plaintiffs claim that the present disputes arise under the Order Confirmation and are not covered under the Agreement's arbitration clause (D.E. 36 at 7-9), that the Agreement lacks consideration (*id.* at 9-10), and that the arbitration clause would subject the Plaintiffs to undue expenses and therefore is unenforceable (*id.* at 10-11). Second, Defendants move the Court to dismiss this suit under Fed. R. Civ. P. 12(b)(2), contending that the Court lacks personal jurisdiction over them. (D.E. 24 at 1.) Defendants also move to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) and 9(b). (*Id.*) Defendant GCR Eurodraw S.p.A. alone also moves to dismiss for insufficient service of process under Fed. R. Civ. P. 12(b)(5). (*Id.*) The Court addresses these motions in turn.

## DISCUSSION

I.  The Arbitration Motion Is Not Properly Offered As A Rule 12(b)(1) Motion To Dismiss For Lack Of Subject Matter Jurisdiction

Precedent teaches that a district court should first turn to jurisdictional objections before addressing whether a case might, in any event, be subject to dismissal on some other basis if jurisdiction were properly founded. *See, e.g., Ruhrgas A.G. v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) ("The requirement that jurisdiction be established as a threshold matter . . . is

inflexible and without exception, . . . and [w]ithout jurisdiction the court cannot proceed at all in any cause.") (internal quotation marks and citations omitted). Moreover, a federal court usually resolves subject matter jurisdiction challenges before proceeding to personal jurisdiction challenges, although that rule is not inflexible and "there is no unyielding jurisdictional hierarchy" for resolving diverse jurisdictional objections. *Id.* at 578; *accord Cent. States S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 n.2 (7th Cir. 2000) ("[A] district court may dismiss for lack of personal jurisdiction without determining whether subject-matter jurisdiction exists.") (citing *Ruhrgas*, 526 U.S. at 578, 587-88).

In this case, Defendants invite the Court to dismiss the case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). In support of this request, Defendants cite district court cases from this district which support the notion that a district court may dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) if the case is properly subject to arbitration. (*See* D.E. 25 at 6 (citing district court decisions where cases were dismissed without prejudice because all claims were subject to mandatory arbitration clause).) Despite the cited district court caselaw, however, the Seventh Circuit has specifically proscribed the practice of dismissing cases that are subject to mandatory arbitration. *Kroll v. Doctor's Associates, Inc.*, 3 F.3d 1167 (7th Cir. 1993), teaches that where all claims are subject to a mandatory arbitration provision, "the proper disposition is a stay [consistent with the Federal Arbitration Act] rather than a dismissal" without prejudice. *Id.* at 1172; *accord Double Sunrise, Inc. v. Morrison Mgmt. Specialists, Inc.*, 149 F. Supp. 2d 1039, 1045 (N.D. Ill. 2001) (staying case subject to arbitration and rejecting invitation to dismiss pursuant to Rule 12(b)(1)); *Herwig v. Hahnaman-Albrecht, Inc.*, No. 96-6107, 1997 WL 72079, at *4 (N.D. Ill. Feb. 13, 1997) (same, and stating that "[d]espite

8

defendant's citation of cases from other district courts that have permitted such dismissal [pursuant to Rule 12(b)(1)] when arbitration is ordered, the Seventh Circuit recognizes that the FAA only authorizes a stay during arbitration, and not a dismissal of the action") (citing *Kroll*, 3 F.3d at 1172).[3]

As a result, the Court declines Defendants' invitation to analyze their request to find all of Plaintiffs' claims to be subject to mandatory arbitration as a Rule 12(b)(1) motion. The Court proceeds to Defendants' personal jurisdiction challenge, which is properly advanced under Rule 12(b)(2) and which must be addressed before any other motions are resolved.

## II. The Court Lacks Personal Jurisdiction Over Defendants As Plaintiffs Have Framed The Case

In addressing the Defendants' personal jurisdiction challenge, it is important to highlight that Plaintiffs are advancing their claims not in their own capacities, but rather "in the place of, and as the assignees of" NAW, the Ohio corporation. (D.E. 19 ¶ 10; *accord, e.g.*, D.E. 36 at 2 n.1.) There are clearly strategic considerations that might prompt litigants such as Plaintiffs to make this decision. As Plaintiffs have framed their claims (*i.e.*, as assignees of NAW's claims), Plaintiffs have been able to seek substantial damages beyond whatever monies LaSalle eventually paid out pursuant to the two-layer letter of credit arrangement established for the

---

[3]     *Kroll* is consistent, at least for present purposes, with other circuit court authority which holds that a motion to compel arbitration is a motion to dismiss for failure to state a cognizable claim under Rule 12(b)(6). *See, e.g.*, *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 597-98 (3d Cir. 2004) ("Our prior decisions support the traditional practice of treating a motion to compel arbitration as a motion to dismiss for failure to state a claim upon which relief can be granted."). Regardless of whether a motion to compel arbitration can fairly be considered a motion to dismiss at all (as opposed to a motion to compel arbitration and stay the litigation), given the Seventh Circuit's teaching in *Kroll*, the salient point is that this Court cannot treat the arbitration motion as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).

NAW deal. Those damages include various lost profits NAW allegedly suffered, as well as various monies NAW allegedly expended in renovating its Ohio production facilities in anticipation of delivery there by Defendants of the promised machinery. These additional damages claims reach to at least $8 million, before any punitive damages claims are even considered.[4] In addition, Plaintiffs—by choosing to advance their claims as assignees of NAW's rights alone, instead of suing alternatively or additionally in their own shoes—likely made the pragmatic assessment that whatever the outcome of any ruling on an arbitration demand, Plaintiffs wanted to expend time and money litigating on the merits in only one forum and not in two. This latter possibility is always a material one whenever one plaintiff in a case (here, NAW) has signed a contract that at least arguably requires arbitration of the pending lawsuit and a co-plaintiff or plaintiffs (here, LaSalle) have not signed that contract. The desire to minimize the chances of being sent to arbitration also may have motivated the Plaintiffs' choice to frame all of their claims as non-contractual ones, instead of pursuing any claims under a straightforward breach of contract theory.

While there are valid strategic considerations that may have prompted Plaintiffs to frame their claims only as assignee claims advancing the rights of NAW, Plaintiffs also must live with the negative consequences of their strategic decision. And the principal negative consequence of that choice, at least from Plaintiffs' perspective, is that the case as framed does not command personal jurisdiction over the foreign Defendants here in the Northern District of Illinois. Accordingly, for the reasons explained below, the case is dismissed without prejudice for lack of

---

[4]     The Court takes no position on whether any of the claimed damages are properly recoverable under the theories advanced, assuming Plaintiffs eventually prevail on the merits in some subsequent litigation, whether it be in court or in an arbitral setting.

personal jurisdiction over Defendants pursuant to Rule 12(b)(2).

Because Defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(2), Plaintiffs bear the burden of establishing the existence of personal jurisdiction. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The Court must, given that no evidentiary hearing has been requested or held, deny Defendants' motion to dismiss if Plaintiffs establish a *prima facie* case of personal jurisdiction. *See id.* Allegations in the Complaint must be taken as true unless controverted by Defendants' affidavits. *See, e.g., Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987); *Birnberg v. Milk St. Residential Assocs. Ltd. P'ship*, Nos. 02-0978, 02-3436, 2003 WL 151929, at *2 (N.D. Ill. Jan. 21, 2003); *Ameritech Servs., Inc. v. SCA Promotions, Inc.*, No. 99-4160, 2000 WL 283098, at *1 (N.D. Ill. Mar. 6, 2000). All conflicts in any affidavits and depositions submitted by the parties must be resolved in Plaintiffs' favor—*i.e.*, in favor of asserting jurisdiction. *See Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1215 (7th Cir. 1984) (collecting cases); *accord, e.g., Purdue Research*, 338 F.3d at 782.

Federal and Illinois precedent leave the federal Constitution as the only limit on personal jurisdiction in this case. A federal district court sitting in diversity has personal jurisdiction over a defendant if a court of the state in which it sits would have it. *See Purdue Research*, 338 F.3d at 779. Illinois's personal jurisdiction statute reaches to the limits of the federal and Illinois Constitutions. *See* 735 ILCS § 5/2-209(c); *Adams ex rel. Adams v. Harrah's Md. Heights Corp.*, 789 N.E.2d 436, 439 (Ill. App. Ct. 2003). Although the Illinois Supreme Court has noted that the federal and Illinois Due Process Clauses are distinct, *see Rollins v. Ellwood*, 565 N.E.2d 1302, 1316 (Ill. 1990), the parties have not cited any authority suggesting any relevant differences that might affect this case, and the Court's research has not uncovered any either. *Accord RAR, Inc.*

11

*v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276-77 (7th Cir. 1997). The Court will therefore proceed to analyze whether it can assert personal jurisdiction over Defendants under the federal Due Process Clause. *See id.* at 1277 (citing *Klump v. Duffus*, 71 F.3d 1368, 1371-72 & n.4 (7th Cir. 1995)).

1. Plaintiffs Have Failed To Establish That This Court Has Specific Personal Jurisdiction Over Defendants

The Court has specific personal jurisdiction over a defendant if two conditions are satisfied.[5] First, the defendant must have minimum contacts with the forum sufficiently related to the plaintiff's claims, *see Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414-415 (1984), by which the defendant has purposefully availed itself of "the privilege of conducting activities within [Illinois], thus invoking the benefits and protections of its laws," *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987). In this regard, the defendant itself, rather than a plaintiff or third party, must create the contacts. *Id.* Moreover, where a plaintiff asserts that this Court has specific personal jurisdiction over a nonresident defendant, the cause of action asserted by the plaintiff must arise out of or be related to the contacts that occurred in Illinois. *See Hyatt v. Int'l Corp. v. Coco*, 302 F.3d 707, 716 (7th Cir. 2002). Second, compelling the defendant to litigate in Illinois must not offend "traditional notions of fair play and substantial justice." *Asahi*, 480 U.S. at 113. In this regard, assertion of jurisdiction must be reasonable in light of the burden it would place on the defendant, the plaintiff's interest in

---

[5] A defendant is subject to general personal jurisdiction over any claim brought against it in forums with which it has "continuous and systematic" contacts. *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 416 (1984). Plaintiffs do not argue that Defendants have this level of interaction with Illinois, and the Court therefore considers the issue waived. *See RAR*, 107 F.3d at 1277; *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1244 n.6 (7th Cir. 1990).

obtaining relief, the interests of Illinois, the judicial system's interest in efficient resolution of

controversies, and the "shared interest of the several States in furthering fundamental substantive

social policies." *Id.*

As Defendants point out, this is not a letter of credit case. Plaintiffs sue as assignees of

NAW's claims against Defendants, and the briefs make clear that the brunt (if not all) of claimed

injuries to NAW occurred in Ohio, not Illinois. (D.E. 36 at 7.) Plaintiffs principally argue that

the exercise of specific personal jurisdiction is appropriate here because Defendants demanded

that LaSalle, an Illinois bank, issue the Letter of Credit for NAW that named Associated as

beneficiary. This demand, Plaintiffs' contend, is purposeful availment on the part of the

Defendants "of the benefits of doing business" in Illinois. (D.E. 36 at 15.)

This theory of Plaintiffs, however, is fundamentally flawed on factual grounds. (The

Court need not speculate about whether Defendants' claims about additional legal flaws with the

theory are correct, given the record in this case.) In this case, Defendants have submitted

unrebutted affidavits which make clear that Defendants never demanded that NAW obtain a

letter of credit from LaSalle as opposed to any other reputable bank.[6] Lorenzo Facchinelli, the

_____

[6]     These affidavits were filed along with Defendants' Reply Brief in support of their motion
to dismiss. This Opinion resolving Defendants' personal jurisdiction objection comes over ten
weeks after Defendants filed their reply declarations. Plaintiffs never moved to strike the
declarations nor moved the Court for leave to file a sur-reply addressing these affidavits or for
leave to file affidavits of their own. Plaintiffs, who are sophisticated financial institutions
(Plaintiff LaSalle Bank's website states that LaSalle Bank has more than $65.1 billion in assets,
*see About LaSalle Bank, at* http://www.lasallebank.com/about/about_us.html (last visited Aug.
10, 2004)), have, therefore, waived any objection to the Court's consideration of these affidavits.
*See Cent. States*, 230 F.3d at 946 n.9 (noting that the Plaintiff forfeited any objection to an
affidavit submitted with the defendants' reply brief in connection with motion to dismiss for lack
of personal jurisdiction by failing to object in the months after the motion was fully briefed and
before the court ruled on the motion) (citing *Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398,
406 (7th Cir. 1998)); *see also Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1134 n.1 (7th

Managing Director of GCR, affirms under penalty of perjury that he alone negotiated the sale for

GCR (Reply Decl. of Lorenzo Facchinelli in Supp. of Defs.' Mot. to Dismiss (D.E. 41) ¶ 2), and

that NAW, rather than the Defendants, chose LaSalle to issue the Letter of Credit (*id.* ¶¶ 5-7).

Lorenzo Facchinelli also has submitted unrebutted testimony that GCR "did not require that

NAW obtain the letter of credit from LaSalle Bank or from a bank in Illinois," and that GCR "did

not participate in NAW's efforts to obtain a letter of credit from LaSalle Bank." (*Id.* ¶ 7.) In

fact, prior to being informed that NAW had selected LaSalle Bank, Mr. Facchinelli never had

even heard of LaSalle Bank. (*Id.* ¶ 5.) Similarly, Emilio Castelbolognesi, Managing Director of

Associated, submitted an unrebutted affidavit affirming that Associated had no involvement in

NAW's decision to select LaSalle as the issuing bank. (Reply Decl. of Emilio Castelbolognesi in

Supp. of Defs.' Mot. to Dismiss (D.E. 40) ¶ 2).)

Most of Plaintiffs' arguments in support of the assertion of personal jurisdiction were

predicated on the notion that Defendants "specifically demanded that those funds [that

guaranteed the 85% of the remaining purchase price] be backed by the credit and lending power

of not just any financial institution, but a financial institution located in Chicago, Illinois." (D.E.

36 at 13; *see also* D.E. 19 ¶ 9.) The record established concerning personal jurisdiction,

however, is directly to the contrary, so the unsupported assertion warrants no credit here. What

the record establishes, based on uncontroverted sworn testimony, is that *NAW* chose LaSalle

Bank as the issuer of the letter of credit, not Defendants, and that Defendants never required

---

Cir. 1996).

LaSalle or any other Illinois bank to be the issuer of any letter of credit.[7]

Precedent rejects any notion that personal jurisdiction can be asserted over the beneficiary of a letter of credit simply because a letter of credit is issued by an institution in a particular putative forum. In *Purdy Co. v. Argentina*, 333 F.2d 95 (7th Cir. 1964), an Illinois vendor sold steel to a purchaser located in Argentina. *Id.* at 96, 98. Under the contract, the Argentine purchaser was required to "establish a letter of credit upon the First National Bank of Chicago in favor of plaintiff," the Illinois vendor, for the purpose of paying the purchase price. *Id.* at 96. The Seventh Circuit rejected the argument that the Argentine purchaser, by establishing the letter of credit with the Illinois bank in favor of the Illinois vendor, and by requiring the vendor to present bills of lading and invoices certified by the Argentine consul in Chicago as conditions precedent to payment, thereby satisfied the "minimal contacts" required by due process to assert personal jurisdiction in Illinois. *Id.* at 97-98. Although portions of the opinion are arguably terse, a review of the opinions cited therein (*id.* at 98 (collecting cases such as *Grobark v. Addo Mach. Co, Inc.*, 158 N.E.2d 73 (Ill. 1959)), *Purdy Co.*'s extended discussion of *Hanson v. Denckla*, 357 U.S. 235 (1958), and several clear statements in the opinion make plain that the Seventh Circuit's holding rested on application of federal due process principles concerning the

---

[7] As Defendants contend, Plaintiffs' unsworn assertions that Defendants "specifically demanded that th[e] funds be backed by the credit and lending power of not just any financial institution, but a financial institution located in Chicago, Illinois" are difficult to square with common sense. (D.E. 36 at 13.) Although Chicago has many strong financial institutions, there are a myriad of other places where strong financial institutions are located—both in Ohio and in other American cities such as Philadelphia, Boston, and New York. The idea that a seller in Milan, Italy—one of the great international commercial centers in the world—somehow would select Chicago alone as the place where a relatively small-dollar letter of credit could be issued strains credulity. In any event, the factual record on this point is clear, and cuts decidedly against LaSalle.

limits of in personam jurisdiction over non-resident defendants. *See, e.g., Purdy Co.*, 333 F.2d at 98 (holding that "[t]he arrangement to make the contract payments through utilization of a letter of credit on an Illinois bank . . . does not in our opinion constitute the transaction of business in Illinois" by the Argentine buyer "or supply the 'minimal contacts' essential to a valid assertion of extra-territorial jurisdiction"); *id.* ("A nonresident purchaser from an Illinois vendor, without other contract with Illinois, is not by reason of such payment device [the Illinois letter of credit] subjected to jurisdiction of the Illinois courts . . . ."); *id.* ("Nothing in the record before us discloses that . . . [the Argentine buyer] has purposefully availed itself of 'the privilege of conducting activities within the forum State, (Illinois) thus invoking the benefits and protection of its laws.'") (quoting *Hanson*, 357 U.S. at 253).

Other caselaw decided since *Purdy Co.* also cuts strongly against Plaintiffs' position. For example, *Paccar International, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058 (9th Cir. 1985), dismissed a suit for lack of personal jurisdiction against a Kuwaiti bank that was made the beneficiary of a letter of credit issued in the putative forum state of California. *See id.* at 1063-64 (dismissing case and stating that "the record does not support the conclusion that . . . [the Kuwaiti bank] purposefully availed itself of the privilege of conducting business in California by becoming the beneficiary of the letter of credit"); *see also Eastland Bank v. Massbank for Sav.*, 749 F. Supp. 433, 438 (D.R.I. 1990) (stating that personal "jurisdiction over beneficiary Massbank [of Massachusetts] can not [sic] be predicated solely on the fact that this state [Rhode Island] is the home of the issuing bank").

In addition, there is a wealth of precedent (from cases that were successfully litigated by banks, coincidentally enough) which establishes the related proposition that no personal

jurisdiction can be asserted over an out-of-state bank that has issued a letter of credit to an in-state beneficiary, simply by virtue of the issuance of the letter of credit. For example, *Jet Charter Service, Inc. v. Koeck*, 907 F.2d 1110 (11th Cir. 1990), dismissed a case against a Swiss bank for lack of personal jurisdiction where the Swiss bank had provided a letter of credit in favor of a Florida entity as an essential part of an aircraft sale transaction. *Id.* at 1113. *Jet Charter* found that the letter of credit was "insufficient under the Fourteenth Amendment to establish personal jurisdiction of the Florida courts" over the Swiss bank, notwithstanding that the bank's officer had also participated in meetings and negotiations in Miami, and the bank delivered the letter of credit to Miami as part of the transaction. *Id.* at 1113-14 (citing, *inter alia*, *Leney v. Plum Grove Bank*, 670 F.2d 878, 881 (10th Cir. 1982), and *Froning & Deppe, Inc. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 695 F.2d 289, 292 (7th Cir. 1982)). Likewise, *Pacific Reliant Industries, Inc. v. Amerika Samoa Bank, Inc.*, 901 F.2d 735 (9th Cir. 1990), held that the defendant bank, located in American Samoa, was "not subject to personal jurisdiction in Oregon simply because it issued a letter of credit in favor of an Oregon beneficiary." *Id.* at 737 (collecting cases, including *Leney*, 670 F.2d at 881). *Pacific Reliant* found that the assertion of personal jurisdiction was improper, notwithstanding that the defendant, Amerika Samoa Bank, "participated in forming the underlying contract, had personal contact with the beneficiary (Pacific), and knew that Pacific would not extend credit or ship goods from Oregon without the letter of credit." *Id.*

Although the Seventh Circuit does not appear to have expressly joined this substantial line of authority, it has relied on it approvingly and applied it in a situation the Seventh Circuit called "analogous." *Froning*, 695 F.2d at 292. In *Froning*, the Seventh Circuit held that the

17

"fundamentals of substantial justice as articulated in *International Shoe* and *World-Wide Volkswagen* would be offended by basing jurisdiction over a non-resident bank upon the bank's mere acceptance of a check which indicates on its face its origin in the forum state." *Id.* at 291-92. *Froning* stated that it found support for its holding in the "analogous case" of *Leney v. Plum Grove Bank*, 670 F.2d 878 (10th Cir. 1982), which, the Seventh Circuit explained, rejected the idea that a putative forum court could "'subject any bank that issues a letter of credit to suit in any state in which the bank could expect the credit to be used.'" *Id.* at 292 (quoting *Leney*, 670 F.2d at 881).

As a result of all of this teaching, the Court concludes that Defendants did not purposefully avail themselves of the privilege of conducting activities within Illinois, thus invoking the benefits and protections of its laws, merely by allowing NAW to use an Illinois bank as the issuer of the letter of credit related to the transaction at issue.[8] That conclusion, moreover, is consistent with more generally applicable due process principles articulated by the Seventh Circuit in recent years. For example, *Federated Rural Electric Insurance Corp. v. Inland Power and Light Co.*, 18 F.3d 389 (7th Cir. 1994), teaches that a relevant consideration in assessing whether a defendant has purposefully availed itself of the benefits and protections of the putative forum is "whether the defendant solicited the transaction in question within the proposed forum." *Id.* at 394 (collecting cases). In this case, the Defendants never solicited LaSalle nor even had a role in choosing LaSalle. Likewise, *Mid-America Tablewares, Inc. v.*

---

[8]     Because of the factual record in this case concerning Defendants' non-involvement in selecting LaSalle to provide the initial letter of credit (i.e., the letter of credit established before ABN-Amro in Monaco was added as a confirming bank), the Court need not decide whether assertion of personal jurisdiction would be appropriate had Defendants actually required a bank in Chicago to issue the letter of credit.

*Mogi Trading Co., Ltd.*, 100 F.3d 1353 (7th Cir. 1996), canvassed foundational Supreme Court authority (*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), and *Asahi* (cited above)) and stated that a defendant cannot fairly be deemed to have purposefully availed itself with respect to the putative forum as a result of "'fortuitous'" or "'attenuated'" contacts, or "'unilateral activity of another party.'" *Id.* at 1360 (quoting *Burger King*, 471 U.S. at 475). Here, the decision to use LaSalle was made by NAW, not Defendants, so those contacts are not fairly attributed to the Defendants.

In addition, even where a defendant has purposefully availed itself of the benefits and protections of a putative forum state's laws, the proposed assertion of personal jurisdiction over a defendant must "comport with 'fair play and substantial justice.'" *Federated*, 18 F.3d at 395 (quoting *Asahi*, 480 U.S. at 112). And here, as in *Federated Rural Electric Insurance Corp.*, the fact that Defendants, and virtually all documentary evidence and witnesses, are not located in Illinois cuts against any assertion of personal jurisdiction. *See id.* Similarly, *Mid-America Tablewares* emphasized that "the burden imposed on a foreign defendant who is forced not only to travel a great distance but also to litigate in a foreign nation's judicial system is quite great and should be given significant weight in the reasonableness determination." 100 F.3d at 1362 (citing *Asahi*, 480 U.S. at 114). This factor too weighs against assertion of personal jurisdiction: while the Defendants (or at least GCR) traveled to Ohio and Georgia when dealing with NAW, there are no allegations and no evidence that either Defendant ever has been to Illinois—much less was in Illinois in connection with the matters in dispute. Finally, in assessing whether an assertion of personal jurisdiction would satisfy the reasonableness prong of the due process analysis, it is significant that the Seventh Circuit spoke quite forcefully against any

19

reasonableness finding when evaluating a commercial scenario that the Seventh Circuit said was "analogous" to a letter of credit scenario. *Froning*, 695 F.2d at 292. Specifically, in assessing whether it would be reasonable to assert personal jurisdiction over a non-resident bank based on its acceptance of a check drawn from an account in the putative forum state, the Seventh Circuit stated that such assertion of personal jurisdiction over a non-resident would be "plainly illogical," *id.* at 295, "would wreak havoc upon the orderly conduct of interstate business," *id.* at 294, and would have "economically disastrous effects," *id.* at 295. Such teaching counsels against reaching out to take jurisdiction here. For all of these reasons, even if Defendants could be deemed to have purposefully availed themselves with respect to Illinois (which precedent teaches they cannot), assertion of personal jurisdiction over them in Illinois would be unwarranted because it would be unreasonable and would offend traditional notions of fair play.

2.      Plaintiffs Have Not Established Intentional Tort-based Jurisdiction

As a backup to their primary argument in support of personal jurisdiction (the discredited "Defendants insisted on a bank in Chicago, Illinois" theory), Plaintiffs also advance an alternative theory. In this regard, Plaintiffs argue that a decision Defendants cited in support of dismissal actually can support an assertion of personal jurisdiction here. (*See* D.E. 36 at 15-17.) As explained below, this theory also fails.

Specifically, Plaintiffs claim personal jurisdiction based on the allegation that the Defendants directed fraudulent misrepresentations towards Illinois when they presented documents in Monaco in support of their draws on the letter of credit, because Defendants knew their misrepresentations to ABN-Amro Monaco would eventually trigger payment by LaSalle in Chicago when ABN-Amro Monaco sought reimbursement. (*Id.* at 16.) The case Plaintiffs offer

20

is *Eastland Bank v. Massbank for Savings*, 749 F. Supp. 433 (D.R.I. 1990), which asserted

personal jurisdiction over the defendant and putative fraudster, but only after the decision made

clear that Massbank had traveled to Rhode Island to call on the letter of credit and forewent the

opportunity to require that Massbank "be allowed to draw on a confirming bank" outside of

Rhode Island, the putative forum state. *Id.* at 439 & n.4. In the case *sub judice*, Defendants have

never come to Illinois, either when negotiating the transaction with NAW, the assignor of the

claims at issue, or when demanding payment under the letter of credit. Instead, Defendants *did*

establish a confirming bank (ABN-Amro in Monaco), where all demands for payment actually

were made. (D.E. 36, Ex. H at1 ; D.E. 19, Ex. D at 1; *id.* ¶ 25 (fraudulent statements allegedly

made to ABN-Amro in Monaco).) As a result, *Eastland Bank* weighs against asserting personal

jurisdiction, not in favor of it.

Plaintiffs base the lion's share of their fallback argument on *Eastland,* and it likely would

be fair, given that Plaintiffs bear the burden of establishing the propriety of personal jurisdiction,

to end the analysis here. Nonetheless, in an abundance of caution, the Court also notes that there

is one other case referenced (as having been cited by *Eastland*), although not discussed, in

Plaintiffs' papers—*Paccar International, Inc. v. Commercial Bank of Kuwait, S.A.K.,* 757 F.2d

1058 (9th Cir. 1985). *Paccar* also does not warrant assertion of personal jurisdiction. First,

*Paccar* in *dicta* discussed the possibility of asserting personal jurisdiction over a direct

beneficiary (the equivalent here of ABN-Amro Monaco) that would be presenting documents to a

California bank owing money on the letter of credit, not of asserting jurisdiction over a party

once removed (like Defendants) who inserted ABN-Amro Monaco as a confirming bank before

any draws were made. *Id.* at 1064-65. Second, to the extent the Ninth Circuit suggested that the

direct beneficiary of a letter of credit would have been subject to personal jurisdiction in California if its fraudulent draw on the letter had injured the California bank, that is of no help to Plaintiffs, as Plaintiffs have chosen to sue as assignees of NAW, not in their own stead. *See id.* at 1064 ("Even assuming that [the beneficiary's] actions were fraudulent, the victim of the fraud was [the applicant] . . . ."). Third, *Paccar refused* to assert personal jurisdiction over the putative foreign drawer on the letter of credit because *Paccar* concluded that such assertion of jurisdiction would flunk the reasonableness prong of the personal jurisdiction/due process analysis. In short, the reasoning and holding of *Paccar* do not help Plaintiffs here.

As stated above, Plaintiffs bear the burden of establishing the propriety of personal jurisdiction over the foreign Defendants, and, with all respect, it is not the Court's task to search Supreme Court and Seventh Circuit precedent to attempt to discharge that burden for Plaintiffs. Nonetheless, it bears mention that both *Paccar* and *Eastland Bank* (which cited it) were evaluating the propriety of personal jurisdiction through application of the "effects test"/intentional tort-based jurisdictional concepts flowing from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984). *See Paccar*, 757 F.2d at 1064 (citing *Calder*); *Eastland Bank*, 749 F. Supp. at 439 (citing, *inter alia, Paccar*). And *Calder*—which involved a California plaintiff who was attempting to assert jurisdiction in California over a non-California defendant, for allegedly tortious conduct—contained the following language when discussing the propriety of such assertion of personal jurisdiction:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and *the brunt of the harm*, in terms both of respondent's emotional distress and the injury to her professional reputation, *was suffered in California. In sum, California is the focal point both of the*

> story and of the harm suffered. Jurisdiction over petitioners is therefore proper in
> California based on the 'effects' of their Florida conduct in California.

*Calder*, 465 U.S. at 788-789 (citing, *inter alia*, *World-Wide Volkswagen Corp. v. Woodson*, 444

U.S. 286, 297-98 (1980)) (emphases added and footnote omitted).

While Plaintiffs have not cited any Seventh Circuit authority addressing *Calder*, Seventh

Circuit precedent and district court authority addressing the propriety of asserting personal

jurisdiction over a non-forum defendant also emphasize the significance of whether the focal

point of the defendant's alleged tortious harm to the plaintiff is in the putative forum. Thus,

when *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club, Ltd.*, 34 F.3d 410 (7th

Cir. 1994), evaluated whether personal jurisdiction could be asserted in Indiana over a Baltimore-

based defendant for alleged trademark infringement that would tortiously confuse fans of the

Indianapolis Colts NFL football team, the Seventh Circuit stated that "[i]f the trademarks are

impaired . . . the injury will be felt mainly in Indiana." *Id.* at 411; *see also id.* at 412 (discussing

*Calder* and stating that "[t]he bulk of the Indianapolis Colts' most loyal fans are, no doubt,

Hoosiers, so that the largest concentration of consumers likely to be confused by broadcasts

implying some affiliation between the Indianapolis Colts and the Baltimore team is in Indiana");

*accord Insolia v. Phillip Morris Inc.*, 31 F. Supp. 2d 660, 672-673 (W.D. Wis. 1998) (discussing

*Calder* and *Indianapolis Colts* and rejecting personal jurisdiction over defendant because "the

geographical focal point of its participation [in the alleged tortious activity] was not Wisconsin,

but all of North America. [Defendant's] 'focus,' or lack thereof, is simply too diffuse to say that

it could have anticipated being haled into court in Wisconsin"). Here, the brunt (if not all) of the

alleged tort's harm befell NAW (the assignor of the claims Plaintiffs have chosen to advance) in

Ohio, not in Illinois. That is why, for example, Plaintiffs are seeking to recover millions of dollars—many millions more than the amount of any letter of credit—relating to expenses allegedly incurred by NAW for renovations to its Ohio plant, lost profits for NAW, and so forth.

As mentioned, Plaintiffs do not discuss any Seventh Circuit authority, but it seems unlikely that the Seventh Circuit would abandon the attention it paid in *Indianapolis Colts* (when applying *Calder*) to the focal point of the allegedly tortious harm to the plaintiff. *Accord, e.g., Harris Rutsky & Co. Ins. Serv. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1131 (9th Cir. 2003) ("The 'effects' test—derived from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984)—may be satisfied if the defendant is alleged to have . . . (3) caus[ed] harm, the brunt of which is suffered—and which the defendant knows is likely to be suffered—in the forum state."); *Carefirst of Md., Inc. v. Carefirst Pregnancy Cntr., Inc.*, 334 F.3d 390, 397-398 & n.7 (4th Cir. 2003) (similar, and citing, *inter alia, Calder*). Otherwise, personal jurisdiction could quickly become rooted in far-flung places that would seem inconsistent with the teachings of *Calder* and *Indianapolis Colts*. In this regard, it bears mention that Plaintiffs conclude their "*Eastland*" fallback argument by stating that when Defendants allegedly defrauded NAW, they "harmed the ability of NAW to conduct its business profitably and thereby made it less able to repay its obligations under the Letter of Credit to LaSalle." (D.E. 36 at 17.) But if that is enough of a basis to ground personal jurisdiction over a foreign defendant—*i.e.*, that the victim of the alleged fraud is thereby made less profitable and less able to pay its obligations to a creditor—then personal jurisdiction over the defendant will rest in any number of potentially far-flung locations where creditors (most of whom are far less able to protect themselves by obtaining security for their debts than a sophisticated financial lender like LaSalle) will be

24

located. Plaintiffs cite no authority in support of their sweeping assertion, which on its terms would allow personal jurisdiction over Defendants in places like California, Puerto Rico, or Guam if NAW had creditors there that it was "less able to repay" as a result of the alleged fraud of Defendants. For all of these reasons, Plaintiffs suing as assignees of the Ohio-based NAW cannot found personal jurisdiction over Defendants here in Illinois.[9]

III.    Defendants' Remaining Motions Are Denied As Moot

Given the Court's holding regarding the threshold issue of personal jurisdiction over Defendants, the Court need not and should not reach Defendants' other motions. The remaining motions, including Defendants' motion to dismiss this case in favor of arbitration under Fed. R. Civ. 12(b)(1), are hereby denied as moot.

---

[9]      Assertion of personal jurisdiction over Defendants also likely might also fail the reasonableness prong of the due process/personal jurisdictional analysis. *See Paccar*, 757 F.2d at 1065-66 (rejecting assertion of personal jurisdiction in California over Kuwaiti bank based on fraud theory, with fraud allegedly occurring through presentment of documents to California bank for letter of credit it issued on behalf of client in Oregon, with court concluding that such assertion of personal jurisdiction failed reasonableness prong of due process analysis). The Court need not reach this issue, given the resolution of other issues in the case.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for lack of personal jurisdiction

is granted. All other motions are denied as moot.

So ordered.

_____

Mark Filip
United States District Judge
Northern District of Illinois

Dated: _____AUG 1 7 2004_____